MoKiNNEY, J.,
delivered the opinion, of the court.
By an act of the Legislature, passed 15th January, 1846, the Duck Biver Navigation Company was incorporated, with full power and authority to make Duck river navigable- from Columbia in Maury county, to the Tennessee river, by means of locks and dams.” Section ten of the act of incorporation provides: “ That if any person shall conceive himself injured by said corporation taking his timber, rocks or other materials, or digging, or flooding his land or other property, by the construction of said improvements, he or they may apply to the circuit court of the county in which the injury may be done, for a writ of ad quod dmmwmi, to be directed to the sheriff of such county, to em- *239 pannel a jury of free holders to go on the premises, and upon oatb, (which oath the sheriff is hereby au-thorised to administer,) assess the amount of damages which may have been sustained; and the court shall, upon the return of. such assessment, render judgment, and award execution for the same, with costs.” In a subsequent part of the same section it is provided, that “the said court may, at the same time, condemn and vest such lands as may have been overflown, and for which damages have been assessed, in said corporation, upon the payment of the value assessed to the party entitled thereto, or into the court for his use.”
The company having been organized under this charter, proceeded to erect a dam across Duck river, about eleven and a half miles, (by the course of the river,) below the town of Columbia, which was completed and the gates of the lock closed about the month of June, 1852.
Stephens & Davis, who were the owners of a grist mill and saw mill situate on Duck river, about half a mile above the town of Columbia, made an application to the circuit court of Maury for a writ of ad quod dcmmwn,, upon the alleged ground that the erection of said dam had greatly injured them, “by backing up the water and flooding and drowning said mills, and rendering their said mills wholly useless and unprofitable.” ' The writ accordingly issued, commanding the sheriff to summon a jury of twelve freeholders, to go upon the premises “and assess upon oath the amount of damages which the said plaintiffs have sustained by reason of the premises aforesaid.”
*240 This command of tbe writ was in strict conformity to tbe prayer of tbe petitioner, presented to tbe court for the issuance of said writ.
Tbe jury reported, that, having been empanneled and sworn by William K.. Porter, a deputy sberiif of Maury county, and having- gone upon tbe premises in tbe writ specified, “and after having fully examined tbe same in tbe presence of tbe counsel of tbe plaintiffs and defendant; and after bearing tbe proof on both sides, and having fully considered of tbe whole matter, we do find in favor of the said plaintiffs, and assess tbe damages they have sustained by reason of tbe dam of said plaintiffs, to be tbe sum of four thousand dollars, by reason of tbe baching of tbe water upon tbe mills and machinery of said plaintiffs, for tbe time that tbe charter of said defendants authorises them to keep up said dam, in and across said river, below said mills and dam of said plaintiffs,” &c. And thereupon the court rendered tbe following judgment: “ It is considered 'by tbe court that said verdict of tbe jury aforesaid, be received, and that tbe plaintiffs recover of tbe defendant their damages aforesaid, by tbe jury in manner and form aforesaid assessed, also their costs in this behalf expended,” and that execution issue, &c. Upon tbe assessment of tbe jury being returned into court, and before judgment thereon tbe defendant by counsel, entered a motion to set aside and quash tbe same. And in support of this motion the defendant produced a copy of a bill pending in tbe chancery court at Columbia, filed by a large number of tbe stockholders, praying, amongst other things, a dissolution of said com *241 pany, because of tbe utter impracticability of tbe object contemplated by tbe charter. Also a series of resolutions passed by tbe board of directors of said company at a meeting beld on tbe 12tb of May, 1853, which, among other things, declare “ it inexpedient for tbe company further to prosecute tbe work, or attempt to render said river navigable by tbe erection of locks and dams; and that tbe board will abandon all further efforts to make said river navigable; ” and furthermore directing tbe gates of tbe lock, at tbe dam complained of, to be forthwith opened, and tbe dam itself to be removed, or cut down so as not to cause tbe water to back upon tbe property of persons above.
These resolutions were adopted subsequent to tbe assessment of damages by tbe jury, which was made on tbe 22d of April, 1853, but and confirmation thereof by tbe court]"''vrlÉ^ii^he 27th of May, 1853.
Tbe defendants also presented ^o^ííe coui’ff,'W^ral affidavits, and among others, tbe afe<ft^®;^.^|!^p»|be' jurors, which states that tbe jxiror^made them^ffisessment of damages “more from tbe proof introduced than from any examination made by themselves,” and that they met at tbe mills, and did not go to tbe dam erected by tbe defendant, or make any examination of it whatever.”
It was made to appear by another affidavit, that tbe defendant objected to tbe examination of witnesses before tbe jury, but the deputy sheriff overruled the objection, and tbe witnesses were examined touching tbe damages which, in their opinion, bad been occasioned to tbe plaintiff’s mills, by tbe erection of said dam. *242 It was also disclosed to tbe court, that within a day or two after the passage of the foregoing resolutions, the gates of the lock were opened and remained open, and that since the gates were thrown open, the backwater does not extend within some considerable distance of the plaintiff’s mills. The affidavits disclose other important facts, which, however, for the purpose of the present decision, need not be noticed.
Upon the foregoing state of facts, it is insisted that the motion to quash ought to have been made absolute, for several reasons:
1. It is argued that the charter, in express terms, requires the writ “ to be directed to the sheriff of the county,” and confers upon him alone the authority to empannel the jury and administer the oath; and consequently these duties cannot be discharged by a deputy, as was done in this case.
We are not prepared to assent to this conclusion. It seems to us that the impanneling the jury and administering the oaths are mere ministerial acts, and may therefore be performed by a deputy.
2. It is maintained that the assessment of the jury was illegal, and should have been treated as a nullity, because made in whole or in part, upon the testimony of witnesses, and not exclusively upon their own observation and knowledge. This position, we think, is unquestionably correct. The charter provides that the jury shall “go on the premises.” No provision is made for the attendance or examination of witnesses, and obviously no such thing was contemplated. The act clearly contemplates an inquiry and assessment of the damages, in the primitive form of trial by jury; *243 according to wbicb tbe jurors themselves were tbe witnesses respecting tbe facts in question, and their verdict was founded upon their own knowledge, without the aid of other testimony. The injuries for which the charter provides a -remedy, are supposed to be objects of sense, and therefore it was intended that the jury, upon the testimony of their own senses, should estimate the damages sustained in the particular case, unaided by the opinions or evidence of witnesses. This is in analogy to the ancient proceeding in real actions, when a view of the premises was thought necessary. See the case of the Clarksville Turnpike Company vs. Atkinson, decided at the last term at this place.
'Whether this is not an impracticable and inadequate remedy in the present case, and whether the act is essentially objectionable in not providing for a revision of the assessment in the circuit court, in the ordinary mode of trial, are questions not for our consideration.
3. It is urged that. the assessment ought to have been set aside, because the jury, instead of estimating the damages actually sustained, up to the time of making the assessment, (as by the terms of the act, as well as by the command of the writ, was their duty¿) gave jprosfeebwe damages, covering all future loss and injury.
In answer to this objection,. it is said, that in point of fact, the measure of the damages assessed by the jury was the estimated value of the property, and that as, by the provision of the charter, the -owners had a right to force auale of the property upon the company, the assessment was substantially what it ought to have been.
In the first. place, it may be remarked, this is a view of the case not warranted' either by the report *244 of tbe jury or tbe action, of tbe court tbereon. Even admitting that tbis was a case in which it would have been competent to tbe jury to have made tbe value of tbe property tbe basis of tbeir assessment of damages, it is sufficient to say, that from tbis report, there is no ground to infer that they in fact did, or intended to do so. Nor did tbis view present itself to tbe mind of tbe court, or provision wpuld have been made in tbe judgment, pursuant to tbe charter, that tbe title to tbe property should be vested in the company upon “the payment of tbe value assessed,” to tbe owners, or into court for tbeir use.
It does not become necessary for tbe decision of tbe present case, that we should attempt to expound tbe charter. with tbe view of defining’ the precise character of tbe cases intended to be embraced by it; for in tbe argument for tbe defendant here it is conceded that tbe case in band falls within it; and perhaps it is within tbe reason, if not within tbe letter of tbe act.
It seems to be assumed by tbe counsel for tbe plaintiffs, that in all cases of injury to property, resulting from tbe erection of a dam or other improvements made by tbe company, whether such injury be only partial, or amount to a total destruction of tbe value of tbe property; tbe owner has a right, by tbe provision of tbe charter,. to demand an assessment of tbe full value of tbe property by tbe jury, and a compulsory sale thereof to tbe company, by tbe judgment of the court, and tbis right, becoming fixed by tbe assessment made by tbe jury, it cannot be affected by tbe subsequent act of tbe company, though amounting *245 to an entire abandonment of the project contemplated by tlie charter, and a complete removal of the canse of injury by the abatement of the dam, or throwing open the lock.
We cannot assent to this reasoning. On the contrary, we think that an utter abandonment of the contemplated scheme of improvement, in good faith, at any time before the final judgment of the court upon the report of the jury, would take away the right of the party injured to insist upon the value of his property, and transfer of the title to the company; and leave him to recover such damages, under all the circumstances of the case, as he may have sustained by the erection of a dam, during its continuance. Of course, in such case, the abandonment of the enterprise, and total removal of the cause of injury, must be established by plenary evidence, and the evidence of abandonment must be of a character to be in law, binding and conclusive upon the company.
In this view of the case, it follows, that the judgment must be reversed, the proceedings set aside, and a writ of ad quod dmrmwm issued de novo.